Filed 9/25/20  Morgan v. AT&T Communications of Cal. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| ADOLPHUS MORGAN,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>AT&T COMMUNICATIONS OF CALIFORNIA, INC. et al.,<br><br>    Defendants and Respondents. | H044994<br>(Santa Clara County<br> Super. Ct. No. CV215743) |

Adolphus Morgan appeals from the summary judgment entered in his disability discrimination and wrongful termination lawsuit.  The trial court ruled that plaintiff failed to make a prima facie showing of a qualified disability under California's Fair Employment and Housing Act (FEHA), which is essential to all his claims.  Plaintiff argues that the record shows he suffered from and was denied a reasonable accommodation for stress he suffered as a result of working under his assigned supervisors, and that his employer failed to engage in an interactive process to determine a reasonable accommodation.  For the reasons stated here, we will affirm the judgment.

## I.  BACKGROUND

Plaintiff was hired by Pacific Bell Telephone Company in 1996.[1]  According to plaintiff, he began having problems at work after he was assigned a new supervisor

---

[1] Plaintiff's employer referred to itself as "AT&T California (Pacific Bell Telephone Company)" in the years preceding his termination.  Purely for ease of reference, we refer to plaintiff's employer as either defendant or AT&T.  We

(Pallares) in 2006.  In October 2007, he experienced chest pains, sought medical treatment, and took a three-month leave of absence.  He returned to work in January 2008, and requested a transfer to a different department.  The request was denied, and his workplace stresses continued.  Plaintiff was assigned a new supervisor (Parks) who he believed was "set[ting] me up to get me fired," and he took a second leave of absence in late May 2008 due to workplace stress.

Plaintiff was seen by his primary care physician twice in June 2008.  On June 4, his physician signed an industrial work status form showing plaintiff "off work from 6/2/2008 through 6/10/2008."  Regarding a June 11 visit, his physician wrote that plaintiff "has been ill and unable to attend work from 6/11/2008 through 6/11/2009."  The physician's notes showed "headache" as the reason for plaintiff's visit, and "stress" as the diagnosis.  The notes indicated "[p]ermanent disability current job–had recurrent symptoms when returned to work in same situation."  Plaintiff applied for short-term disability benefits which were denied by AT&T because the medical documentation did not support "an ongoing severity of impairment or significant limitation in functioning."

Plaintiff filed a worker's compensation claim.  On July 21, 2008, an occupational psychologist diagnosed plaintiff with "adjustment disorder" and "occupational problem."  The psychologist opined, "I cannot state with clinical probability that the claimant's presentation is predominantly the result of industrial factors, and recommend that he undergo a formal Q.M.E. evaluation to include psychological testing."  A follow-up appointment was scheduled for August 21, with a treatment plan for plaintiff "to work at alternative work site from 7/21/08 to 8/21/08," and "[i]f the employer cannot accommodate these restrictions, patient must be regarded as unable to work for this period."  On July 24, his treating physician noted that plaintiff "[f]eels well – off work"

---

acknowledge but need not address the parties' dispute as to whether the corporate entity that employed plaintiff was properly named as a party to the lawsuit.

2

and "[h]as applied for another job," and that he "should not return to [the] same job as before."

Plaintiff was placed on unpaid "Denied Disability Benefits Leave (DDBL)" from June 9, 2008 through August 6, 2008, following the denial of his disability claim. (AT&T describes DDBL as "a limited discretionary unpaid leave of absence provided to an employee who has been denied disability benefits under the [employer's disability benefits plan], and who has been absent from work for over 30 days.") The discretionary unpaid leave was extended to September 19, 2008, then to December 1, 2008, and for a third time to January 20, 2009. On March 13, 2009, AT&T informed plaintiff by letter that if his physician "continues to disable you and you remain unable to perform the essential functions of your job, your DDBL will not be extended beyond March 26, 2009." The letter explained, "If you are incapable of performing the essential functions of your job, either with or without a reasonable accommodation, you may be eligible for a priority job search. I urge you to discuss this issue with your treating physician in order to evaluate whether a job search would be appropriate. Please have your physician complete the enclosed Work Capacities Checklist (WCCL). You must return the completed WCCL by March 23, 2009, so that we can determine whether to proceed with a priority job search. [¶] OR [¶] Report to work, ready, willing and able to perform your job as a Manager OSP Engineering Design on or before March 27, 2009."

Plaintiff returned the checklist on which his treating physician indicated plaintiff had no physical work capacity restrictions. The physician answered "yes" to the question "Are you aware of any accommodations that would help this employee perform his/her job functions?" Asked to "Please list or describe them, identifying the functions accommodated," the doctor wrote "alternative worksite/alternative supervisor," and anticipated the duration of the accommodation to be "permanent." Plaintiff was notified by letter on March 30, 2009 that he had been terminated on March 27 because the WCCL indicated he was able to return to work and he failed to do so.

3

Plaintiff sued AT&T Communications of California, Inc. and AT&T Corp., alleging wrongful termination in violation of public policy (first cause of action); wrongful termination in violation of FEHA (second cause of action); disability discrimination in violation of FEHA (third cause of action); disability discrimination in violation of public policy (fourth cause of action); failure to provide a reasonable accommodation in violation of FEHA (fifth cause of action); failure to engage in an interactive process in violation of FEHA (sixth cause of action); retaliation in violation of FEHA (seventh cause of action); and retaliation in violation of public policy (eighth cause of action).

Plaintiff alleged in the complaint that he took a temporary leave of absence between October 2007 and January 2008 "due to work-related stress, including suffering severe chest pains, shortness of breath, headaches, anxiety, fear, and loss of sleep"; upon his return to work, plaintiff requested as an accommodation a transfer to a different department and location; instead, he was assigned a new supervisor who "continued the same pattern and practice of conduct" as the previous supervisor.

Plaintiff alleged in the complaint that he took a second leave of absence in May 2008 "based on physical and mental disabilities he was suffering, due to the workplace conditions"; he was placed on short-term disability by his treating physician; and AT&T recognized his disability through March 26, 2009. Plaintiff alleged his treating physician advised AT&T that plaintiff "could perform the essential functions of his position" if transferred to a different department or location; plaintiff believed and informed defendant that he could perform the essential functions of his job if transferred; and plaintiff's requests for a transfer were refused. Plaintiff alleged he was terminated from his job while he was suffering from physical and mental disabilities. He alleged AT&T refused to accommodate him with a transfer; failed to engage in an interactive process to accommodate his disabilities; retaliated against him; and violated public policy.

4

AT&T moved for summary judgment or in the alternative summary adjudication, contending, among other things, that neither named defendant was plaintiff's employer, and that because plaintiff was not a "person with a disability" under FEHA he had failed to establish a prima facie case of discrimination. The trial court granted summary judgment based on plaintiff's failure to name his employer as a defendant. We reversed that judgment (based on triable issues as to the identity of the employer for FEHA purposes) and remanded the matter to the trial court to consider the remaining grounds raised in defendant's dispositive motion. (*Morgan v. AT&T Communications of California, Inc.* (July 19, 2016, H039904) [nonpub. opn.].)

After further hearing, the trial court granted defendant's motion. In a written order, the court ruled that plaintiff had failed to establish a prima facie case of disability discrimination under FEHA because his claimed disability—stress associated with or caused by his supervisor—does not qualify as a disability under FEHA as a matter of law. The remaining causes of action therefore failed because a qualifying disability is a necessary predicate for those claims.

## II. DISCUSSION

"A defendant's motion for summary judgment should be granted if no triable issue exists as to any material fact and the defendant is entitled to a judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) The burden of persuasion remains with the party moving for summary judgment. [Citation.] When the defendant moves for summary judgment, in those circumstances in which the plaintiff would have the burden of proof by a preponderance of the evidence, the defendant must present evidence that would preclude a reasonable trier of fact from finding that it was more likely than not that the material fact was true [citation], or the defendant must establish that an element of the claim cannot be established, by presenting evidence that the plaintiff 'does not possess and cannot reasonably obtain, needed evidence.' " (*Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1002–1003.) If a defendant's moving papers make a

5

prima facie showing that would justify a judgment in its favor, the burden of production shifts to the plaintiff to make a prima facie showing of the existence of a triable issue of material fact. (Code Civ. Proc., § 437c, subd. (*o*)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.)

To state a prima facie case for disability discrimination under FEHA, a plaintiff must demonstrate he or she (1) was physically or mentally disabled within the meaning of FEHA; (2) was performing his or her job competently; (3) suffered an adverse employment action; and (4) some other circumstance suggesting discriminatory motive. (Gov. Code, § 12940, subd. (a); *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 355.) A person is physically or mentally disabled within the meaning of FEHA if his or her physiological, mental, or psychological condition "limits a major life activity." (Gov. Code, §§ 12926, subds. (j)(1), (m)(1)(B); 12940, subd. (a).) FEHA defines "major life activities" to include "physical, mental, and social activities and working." (Gov. Code, § 12926, subds. (j)(1)(C), (m)(1)(B)(iii).) A physical or mental condition limits a major life activity "if it makes the achievement of the major life activity difficult." (*Id.*, § 12926, subds. (j)(1)B), (m)(1)(B)(ii).)

"An employee's inability to work under a particular supervisor because of anxiety and stress related to the supervisor's standard oversight of the employee's job performance does not constitute a disability under FEHA." (*Higgins-Williams v. Sutter Medical Foundation* (2015) 237 Cal.App.4th 78, 84; see also *Hobson v. Raychem Corp.* (1999) 73 Cal.App.4th 614, 628, disapproved on other grounds in *Colmenares v. Braemar Country Club, Inc.* (2003) 29 Cal.4th 1019, 1030 ["the inability … to work under a particular supervisor [] does not constitute a qualified disability" under FEHA]; *Jackson v. Kaplan Higher Educ., LLC* (2015) 106 F.Supp.3d 1118, 1125 ["courts in this circuit have uniformly disallowed claims of disability discrimination where the 'disability' claimed was the inability to get along with the worker's supervisor"]; *Weiler v. Household Finance Corp.* (7th Cir. 1996) 101 F.3d 519, 524 ["The major life activity

6

of working is not 'substantially limited' if a plaintiff merely cannot work under a certain supervisor because of anxiety and stress related to his review of her job performance"].) To hold otherwise "would be the transmutation of a legislative act whose purpose was to prevent discrimination into a cause of action for anyone whose individual sensibilities result in significant stress when they are treated in a manner that is disagreeable to them but is otherwise lawful." (*Jackson v. Kaplan Higher Educ., LLC.*, at p. 1125.)

We review the record and the trial court's summary judgment ruling de novo. (*Kahn v. East Side Union High School Dist.*, *supra*, 31 Cal.4th at p. 1003; *Guz v. Bechtal National, Inc.*, *supra*, 24 Cal.4th at p. 334.) In determining whether the parties have met their respective burdens, we must " ' consider all of the evidence' and 'all' of the 'inferences' reasonably drawn therefrom [citation] and must view such evidence [citations] and such inferences [citations] in the light most favorable to the opposing party." (*Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 843.)

## A. DISABILITY DISCRIMINATION UNDER FEHA (Third Cause of Action)

AT&T argues the undisputed facts show that plaintiff's alleged disabling condition is nothing more than the manifestation of symptoms arising from his inability to work under his assigned supervisor, and thus does not constitute a physical or mental disability under FEHA as a matter of law.

The undisputed facts show that the disability plaintiff alleges is his personal reaction to his supervisor's oversight and management style, which rendered him unable to work under the supervision of a particular person. In his declaration opposing summary judgment, plaintiff stated: "I was having physical and mental symptoms (stress, chest pains, loss of sleep, loss of appetite) caused by stress on the job"; "These physical and mental stresses did not exist prior to Pallares becoming my supervisor [in 2006]"; and "Prior to Pallares entering my department and becoming my supervisor, I had never had symptoms and stresses like this at work." Plaintiff declared that his new supervisor (Parks) "continued the same pattern and practice of conduct that I had previously

7

endured"; his doctor "told me that my symptoms were being caused by work-related issues"; and "I wanted to transfer to another department for all of the reasons stated herein, most importantly the physical and mental symptoms I had due to work-related stress." Plaintiff confirmed in his deposition that Pallares was the only reason he was allegedly experiencing stress at work during the time he reported to her, and he returned to work in January 2008 without any restrictions as to the kind of work he could do. He stated that he felt like grabbing Parks in May 2008 because "that whole week had been ... testy dealing with him." He admitted as undisputed facts that he "wanted to transfer to another department because of the alleged stress he was experiencing as a result of working with Parks, who he claimed 'nitpicked' his work, just as Pallares had allegedly done," and "he could have performed the essential functions of his position if he had been transferred to a different department." Plaintiff's treating physician certified in March 2009 that plaintiff had no restrictions and was able to perform the essential functions of his job, and plaintiff admitted to being "ready, willing and able to perform the essential functions of his position if he was transferred to another department."

Plaintiff argues that he is physically disabled because "his physicians had placed him on permanent disability, unable to perform the essential functions of his current job," and AT&T has not challenged his "heart attack, physical symptoms[,] or the doctor's diagnosis, opinions or advice." But the doctor's diagnosis of work-related stress does not by itself render plaintiff disabled within the meaning of FEHA. (*Higgins-Williams v. Sutter Medical Foundation*, *supra*, 237 Cal.App.4th at p. 84; *Hobson v. Raychem Corp.*, *supra*, 73 Cal.App.4th at p. 628.) Nor is the doctor's recommendation that plaintiff be accommodated with an alternative worksite or alternative supervisor evidence of a *disabling condition* that limited his ability to work.

Plaintiff stated in his deposition that he had an "almost heart attack" in October 2007, and his doctor "took me off [work]" from October 2007 through January 2008. The medical records related to the 2007 event show a chest x-ray yielding no acute

8

abnormality and no myocardial ischemia or evidence of on-going ischemia. An angiogram was scheduled, the results of which have not been offered in evidence. Nor do the medical records from 2008 identify a physiological condition limiting plaintiff's ability to work. Indeed, plaintiff's disability claim was denied because of insufficient medical documentation.

The cases plaintiff cites are inapposite. In *Soria v. Univision Radio Los Angeles*, *Inc.* (2016) 5 Cal.App.5th 570, the court found that treatment for an employee's stomach tumor, consisting of doctor visits and potential surgery which resulted in plaintiff missing work, presented a material question of fact as to whether the ailment limited the major life activity of working and thus qualified as a disability under FEHA. (*Soria v. Univision Radio Los Angeles*, *Inc.* at pp. 587–589.) Here, plaintiff has no condition which requires treatment that would prevent him from working.

In *Bryan v. United Parcel Service, Inc*. (2004) 307 F.Supp.2d 1108, the court held that employees with monocular vision were disabled within the meaning of FEHA because the condition excluded them from working as full-time delivery drivers and thus limited the major life activity of working. (*Bryan v. United Parcel Service, Inc.* at p. 1110.) There was no dispute in that case that the employees suffered from a vision impairment. The issue was whether, by precluding eligibility for one but not all positions with the employer, the impairment limited the employees' ability to participate in the major life activity of working. (*Ibid*.) In contrast here, plaintiff has identified no physiological impairment which would limit his ability to work, nor had defendant deemed plaintiff ineligible to work because of any perceived impairment.

Plaintiff analogizes his case to a harassment claim where a supervisor's conduct vis à vis an employee is illegal. But plaintiff did not sue AT&T for workplace harassment, nor did he allege that his supervisors engaged in harassing conduct under FEHA. His lawsuit raised only disability discrimination and derivative causes of action.

9

AT&T is entitled to judgment as a matter of law because plaintiff has failed to demonstrate that he was physically or mentally disabled within the meaning of FEHA.

## B. REMAINING CAUSES OF ACTION

Because plaintiff has failed to make a prima facie showing that he is a person with a FEHA-recognized disability, the second, fifth, sixth, and seventh causes of action necessarily fail, as wrongful termination, failure to accommodate, failure to engage in the interactive process, and retaliation all require proof of a recognized disability. (Gov. Code, § 12940, subd. (a) [unlawful to discharge employee because of a physical or mental disability]; subd. (m)(1) [failure to make reasonable accommodation for a known physical or mental disability]; subd. (m)(2) [retaliation for requesting accommodation]; subd. (n) [failing to engage in the interactive process in response to request for reasonable accommodation by disabled employee].)[2]

The first, fourth, and eighth causes of action alleging common law public policy violations also fail, as they, too, require proof of a disability under FEHA. (*Green v. Ralee Engineering Co*. (1998) 19 Cal.4th 66, 79 [tethering public policy violations in wrongful discharge cases " 'to specific constitutional or statutory provisions' "]; *Stephenson v. Superior Court* (1997) 16 Cal.4th 880, 904 [when a plaintiff "relies upon a statutory prohibition to support a common-law cause of action for wrongful termination

_____

[2] Plaintiff's concession at oral argument notwithstanding, we reject AT&T's argument that the retaliation cause of action fails as a matter of law for failure to exhaust administrative remedies. That cause of action alleges AT&T retaliated by refusing to accommodate and engage in the interactive process. It is reasonably related to the allegations in plaintiff's administrative complaint that AT&T failed to engage in the interactive process, denied him a reasonable accommodation, and terminated him because of his disability (stress). (*Okoli v. Lockheed Technical Operations Co.* (1995) 36 Cal.App.4th 1607, 1614; *Sandhu v. Lockheed Missiles & Space Co*. (1994) 26 Cal.App.4th 846, 859; 2 Cal. Code Regs. § 10003 ("Where the facts alleged in a discrimination complaint support ... any other claim over which the department has jurisdiction, the department shall construe the complaint to include those claims within the scope of a discrimination claim, regardless of whether such other claims are expressly stated.")

in violation of public policy, the common-law claim is subject to statutory limitations affecting the nature and scope of the statutory prohibition"].)

## III.  DISPOSITION

The judgment is affirmed.  Respondents shall recover costs on appeal.

_____

Grover, J.

**WE CONCUR:**


_____

Greenwood, P. J.


_____

Bamattre-Manoukian, J.


**H044994 -** *Morgan v. AT&T Communications of California, Inc. et al*