Filed 5/26/15

## CERTIFIED FOR PUBLICATION

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Sacramento)

----

| | |
|---|---|
| MICHAELIN HIGGINS-WILLIAMS, | C073677 |
| Plaintiff and Appellant, | (Super. Ct. No. 34-2011-00102428-CU-WT-GDS) |
| v. | |
| SUTTER MEDICAL FOUNDATION, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Rudolph R. Loncke, Judge.* Affirmed in part and remanded with directions.

Beyer, Pongratz & Rosen, Stephen G. Pongratz, Etan E. Rosen and Ralph C. Lee for Plaintiff and Appellant.

Hanson Bridgett, Jahmal T. Davis and Adam W. Hofmann for Defendant and Respondent.

In this action for disability discrimination and wrongful termination, we affirm a summary judgment in favor of the defendant employer. We do so largely because the

---

* Retired judge of the Sacramento Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

1

plaintiff employee's alleged disability—an inability to work under a particular supervisor because of anxiety and stress related to the supervisor's standard oversight of job performance—is not a disability recognized in California's Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.).[1]

## PROCEDURAL AND FACTUAL BACKGROUND

### *Summary Judgment Standard of Review*

"The aim of the summary judgment procedure is to determine, through the use of declarations and evidence disclosed in discovery, whether the parties possess conflicting evidence on a material issue that requires a trial to sort out—in short, whether a triable issue of material fact exists." (*Yanez v. Plummer* (2013) 221 Cal.App.4th 180, 185-186 (*Yanez*).)

In reviewing a summary judgment, we first identify the issues framed by the pleadings since it is these allegations to which the motion must be directed. (*Rio Linda Unified School Dist. v. Superior Court* (1997) 52 Cal.App.4th 732, 734-735.) Summary judgment is properly granted to a defendant who shows that an element of the plaintiff's cause of action cannot be established, unless the plaintiff sets forth specific facts showing a triable issue of material fact as to that element. (*Yanez, supra*, 221 Cal.App.4th at p. 186.)

"We review independently from the trial court the summary judgment papers. We do not resolve factual issues but ascertain whether there are any to resolve." (*Yanez, supra*, 221 Cal.App.4th at p. 186.)

### *The Complaint's Causes of Action*

The complaint alleges four causes of action under FEHA (§ 12900 et seq.): disability discrimination; failure to engage in the interactive process and make reasonable

---

[1] Undesignated statutory references are to the Government Code.

accommodation for the disability; retaliation for assertion of disability rights; and disability-related wrongful termination in violation of public policy.

Additionally, the complaint alleges two causes of action under California's Moore-Brown-Roberti Family Rights Act (CFRA; §§ 12945.1, 12945.2): discrimination for using CFRA leave; and CFRA-related wrongful termination in violation of public policy.

***Undisputed Facts***

The summary judgment papers show the following undisputed facts.

In September 2007, defendant Sutter Medical Foundation (Sutter) hired plaintiff Michaelin Higgins-Williams (plaintiff) as a clinical assistant in Sutter's Shared Services Department (the Department or the Shared Services Department). The Department's clinical assistants work as "floaters" doing patient intake.

Since 2007, Norma Perry has been Sutter's regional manager overseeing the Shared Services Department. From 2007 through 2011, Debbie Prince was plaintiff's immediate supervisor in the Department, and reported to Perry.

In June 2010, plaintiff reported to her treating physician, Alexander Chen, M.D., that she was stressed because of interactions at work with human resources and her manager. Dr. Chen diagnosed plaintiff as having adjustment disorder with anxiety.

Based on Dr. Chen's diagnosis, Sutter granted plaintiff a stress-related (disability) leave of absence from work under the CFRA and the federal Family and Medical Leave Act of 1993 (FMLA; 29 U.S.C. § 2601 et seq.), from June 28, 2010, through August 2, 2010. Dr. Chen reported plaintiff's disabling condition as " 'stress[] when dealing with her Human Resources and her manager.' "

Plaintiff exhausted her available CFRA and FMLA leave entitlements when she took this leave of absence from June 28 through August 2, 2010.

3

When plaintiff returned to work on August 3, 2010, she received a negative performance evaluation from supervisor Prince, which was also signed by regional manager Perry; this was plaintiff's only negative evaluation while employed at Sutter.

According to plaintiff, regional manager Perry, on September 8, 2010, began singling plaintiff out for negative treatment; Perry was curt and abrupt with plaintiff, while being open and friendly with plaintiff's coworkers, and gave plaintiff a disproportionate share of work.

The next day, September 9, 2010, according to plaintiff, supervisor Prince inaccurately accused plaintiff of being irresponsible in the care of her identification badge. And on that same day, regional manager Perry grabbed plaintiff's arm and yelled at her, after which plaintiff suffered a panic attack, left work, and never returned.

In mid-September 2010, plaintiff submitted to Sutter a disability accommodation request form, requesting a transfer to a different department (for " 'forever' "), a schedule of 9:00 a.m. to 6:00 p.m., and, pursuant to Dr. Chen's recommendation, a leave of absence from September 9 through October 31, 2010. Sutter granted the requested leave of absence.

Plaintiff's only alleged disability was her adjustment disorder with anxiety.

In late October 2010, pursuant to a status report to Sutter, Dr. Chen stated he could not comment on plaintiff's return to work because Sutter had yet to decide whether to transfer plaintiff out of the Shared Services Department. Sutter extended plaintiff's leave through November 9, 2010.

In another status report to Sutter on November 4, 2010, Dr. Chen stated that plaintiff needed to be transferred out of the Shared Services Department under a different regional manager, and that if such a transfer occurred, plaintiff would be able to function

4

without limitations. Sutter extended plaintiff's leave of absence through December 16, 2010.

In late December 2010, Dr. Chen, after consulting with a physician (Alan Rosenthal, M.D.) working for Sutter's third party disability administrator, (1) stated to Dr. Rosenthal that, while plaintiff was able to return to work as a clinical assistant, Dr. Chen was concerned about plaintiff's ability to do so in the same department as regional manager Perry; and (2) told plaintiff he believed she was ready to return to work on or about December 27, 2010 (although plaintiff later informed Dr. Chen she was not mentally ready to do so).

On January 6, 2011, Dr. Chen informed Sutter that plaintiff could not return to work on January 6, and requested that Sutter permit plaintiff to return to the Shared Services Department beginning March 1, 2011, on light duty in conjunction with Sutter's transitional Connecting to Work Program.

On January 24, 2011, Sutter informed plaintiff (1) that Dr. Chen had stated on January 6, 2011, that plaintiff could not return to work then, but that plaintiff wanted to return on March 1, 2011, on light duty in the Connecting to Work Program; (2) that Dr. Chen did not provide any information as to if or when plaintiff would be able to return to her clinical assistant position; (3) that there was no information to support a conclusion that additional leave as an accommodation would effectuate plaintiff's return as a clinical assistant; and (4) that if plaintiff did not provide such information by January 31, 2011, her employment would be terminated February 1, 2011.

On January 28, 2011, Dr. Chen informed Sutter that plaintiff was not medically cleared to return to work at that point, and that plaintiff would continue her regimen of psychotherapy and medications. In her deposition, plaintiff testified she did not feel she could have returned to work in the Shared Services Department with regional manager Perry or supervisor Prince on February 1, 2011. Plaintiff also testified at her deposition

5

that at the time of her termination, she " 'was willing to try' " to return to work on March 1, 2011, in the Shared Services Department under manager Perry.

Sutter terminated plaintiff February 1, 2011.

## DISCUSSION

### I. Cause of Action for Disability Discrimination—Undisputed Facts Show Plaintiff Is Not Disabled

Plaintiff alleges as a cause of action that Sutter discriminated against her based on a disability and failed to prevent such discrimination, in violation of FEHA.

FEHA states, as relevant, "It is an unlawful employment practice . . . [f]or an employer, because of . . . mental disability . . . to discriminate against [an employee] . . . in terms, conditions, or privileges of employment." (§ 12940, subd. (a).) A qualifying "mental disability" under FEHA includes "any mental or psychological disorder . . . , such as . . . emotional or mental illness" that "limits a major life activity." (§ 12926, subd. (j)(1).) The term "major life activity" is broadly construed and includes physical, mental and social activities, and working (§ 12926, subd. (j)(1)(C)); "limits" means the achievement of a major life activity is made difficult (*id.*, subd. (j)(1)(A) & (B)).

To establish a prima facie case of mental disability discrimination under FEHA, a plaintiff must show the following elements: (1) She suffers from a mental disability; (2) she is otherwise qualified to do the job with or without reasonable accommodation; and (3) she was subjected to an adverse employment action because of the disability. (*Faust v. California Portland Cement Co.* (2007) 150 Cal.App.4th 864, 886; Chin et al., Cal. Practice Guide: Employment Litigation (The Rutter Group 2013) ¶ 9:2297, p. 9-190.)

As we shall explain, the undisputed facts show plaintiff does not suffer from a FEHA-recognized mental disability; consequently, the trial court properly granted

6

summary adjudication of this cause of action because plaintiff cannot establish the element of a disability.

An employee's inability to work under a particular supervisor because of anxiety and stress related to the supervisor's standard oversight of the employee's job performance does not constitute a disability under FEHA. (*Hobson v. Raychem Corp.* (1999) 73 Cal.App.4th 614, 628 (*Hobson*) ["the inability to perform one particular job, *or to work under a particular supervisor,* does not constitute a qualified disability" under FEHA (italics added)]; see *Weiler v. Household Finance Corp.* (7th Cir. 1996) 101 F.3d 519, 522, 524-525 [both *Hobson* and *Weiler* apply the narrower federal test of disability of "*substantially* limits" a major life activity, rather than the broader California test of simply "limits"; *Hobson* was disapproved on this point in *Colmenares v. Braemar Country Club, Inc.* (2003) 29 Cal.4th 1019, 1031, fn. 6] (*Colmenares*).)

As set forth above in the undisputed facts of the Factual and Procedural Background, plaintiff and her treating physician, Dr. Chen, acknowledged on several occasions, both directly and through requests for a transfer from the Shared Services Department, that plaintiff was unable to work under her regional manager Perry or her supervisor Prince because of anxiety and stress related to their standard oversight of plaintiff's job performance; Dr. Chen diagnosed plaintiff as having adjustment disorder with anxiety, and reported plaintiff's disabling condition as " 'stress[] when dealing with her Human Resources and her manager.' " [2] This is precisely "the inability . . . to work under a particular supervisor" that *Hobson* says does not rise to a FEHA-recognized disability. (*Hobson*, *supra*, 73 Cal.App.4th at p. 628.)

---

[2] As for alleged nonstandard supervisorial oversight, all plaintiff can muster is that regional manager Perry began singling plaintiff out for negative treatment on September 8, 2010, and that on the very next day, Perry grabbed plaintiff's arm and yelled at her, after which plaintiff suffered a panic attack, left work, and never returned.

7

Admittedly, plaintiff is correct that *Hobson* has been disapproved on one point and questioned on another.

First, as noted, the state Supreme Court has disapproved *Hobson* to the extent it held or suggested that "disability" under FEHA requires a "*substantial* limit" on a major life activity (as the parallel federal act, Americans with Disabilities Act of 1990 (ADA), requires); "disability" is defined more broadly under FEHA, requiring only a "limit" on a major life activity. (*Colmenares*, *supra*, 29 Cal.4th at p. 1031, fn. 6; see § 12926.1, subd. (c) [added to FEHA in 2000 as part of the Pruddence Kay Poppink Act (Stats. 2000, ch. 1049, §§ 1, 6), explicitly acknowledging that FEHA "disability" requires a " 'limitation' " upon a major life activity, not a " 'substantial limitation' " as the ADA requires].)

And, second, *Hobson*'s point that "the *inability to perform one particular job* . . . does not constitute a [FEHA-]qualified disability," has been questioned (by a Ninth Circuit case). (*Hobson*, *supra*, 73 Cal.App.4th at p. 628, italics added; see § 12926.1, subd. (c) [stating, as relevant, "[U]nder the law of this state, 'working' is a major life activity, regardless of whether the actual or perceived working limitation implicates *a particular employment* or a class or broad range of employments" (italics added)]; see also *EEOC v. United Parcel Service, Inc.* (9th Cir. 2005) 424 F.3d 1060, 1064, 1072-1073 (*EEOC*) [" 'exclusion from a single job with a single employer' " possibly constitutes, under FEHA, a disability-satisfying " 'limitation' " in working; in *EEOC*, the exclusion from the particular *type* of job of driving the large trucks in the UPS fleet, because of monocular vision, constituted a FEHA physical disability (a disability, though, which could be subject to an employer's affirmative defense that safety requires such an exclusion)].)

What no decision has disapproved or questioned, however, is the *Hobson* point directly on point here—i.e., that an employee's *inability to work under a particular*

8

*supervisor because of anxiety and stress related to the supervisor's standard oversight* of the employee's job performance does not constitute a mental disability under FEHA. (*Hobson*, *supra*, 73 Cal.App.4th at p. 628.)  And, plaintiff cannot equate *EEOC's* language that an " 'exclusion from a single job with a single employer' " may constitute a FEHA disability (*EEOC*, *supra*, 424 F.3d at p. 1072), with "an employee's inability to work under a particular supervisor" (*Hobson*, at p. 628), because the context in *EEOC* was that of working in a " 'single [*type* of] job' " and not that of working under a particular supervisor (*EEOC*, at p. 1072, italics added).

We conclude the trial court properly summarily adjudicated plaintiff's cause of action for disability discrimination and failure to prevent such discrimination.  The undisputed facts show that plaintiff cannot establish the element of a disability.

## II.  In Light of the Undisputed Facts Showing No Disability, Plaintiff's Other Disability-based Causes of Action Fail

Plaintiff also alleged as causes of action that Sutter (1) violated section 12940, subdivision (n), of FEHA, by failing to engage in a good faith, interactive process to make reasonable accommodation for plaintiff's mental disability; (2) violated section 12940, subdivision (h), of FEHA, by retaliating against plaintiff because of her requests for a disability accommodation in the form of a transfer; and (3) wrongfully terminated her in violation of public policy, under *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167 (*Tameny*), based on her mental disability.

These three causes of action fail in light of the undisputed facts showing that plaintiff did not have a legally recognized mental disability.

### III. Remaining Causes of Action for Discrimination and Wrongful Termination for Using CFRA/FMLA Leave, and for Asserting Legal Rights, Fail Too

Plaintiff has also alleged causes of action, based on section 12945.2 of the CFRA, for discrimination for using the CFRA/FMLA leave and for wrongful termination in violation of public policy for using such leave.

As we have seen, undisputed facts show that plaintiff exhausted her available CFRA and FMLA leave entitlements when she took her leave of absence from June 28 through August 2, 2010.

Undisputed facts also show that Sutter granted plaintiff further, accommodation-based leave from September 9, 2010, through January 31, 2011, or nearly five additional months of leave after plaintiff exhausted her CFRA/FMLA leave. Sutter informed plaintiff that she would be terminated February 1, 2011, unless she provided information by January 31, 2011, either as to when she would be able to return to her clinical assistant position, or that additional leave as an accommodation would effectuate such a return. Plaintiff did not provide this information. Her doctor, on January 28, 2011, merely informed Sutter that plaintiff was not medically cleared to return to work at that point (the doctor had earlier concluded that plaintiff was ready to return to work on or about December 27, 2010; and the doctor had earlier requested that Sutter permit plaintiff to return to the Shared Services Department on March 1, 2011, on light duty).

The relevant facts concerning these remaining causes of action wrap up with plaintiff's deposition. In her deposition, plaintiff testified she did not feel she could have returned to work in the Shared Services Department with manager Perry or supervisor Prince on February 1, 2011, but also stated that, at the time of her termination (i.e., February 1, 2011), she " 'was willing to try' " to return to work in that department on March 1, 2011, under Perry.

As for plaintiff's CFRA/FMLA leave-related causes of action, then, her confusing and incomplete deposition testimony, in light of the undisputed facts just summarized, does not raise the legally required *genuine* issue of material fact to overcome the summary adjudication of those causes of action. (See *King v. United Parcel Service, Inc.* (2007) 152 Cal.App.4th 426, 433, 444 [must establish a genuine issue of material fact to overcome summary adjudication/judgment].) Noting the most obvious deficiencies in that deposition testimony, plaintiff does not indicate if or when she could return as a clinical assistant, does not indicate she could work under supervisor Prince, and does not indicate she could actually work under regional manager Perry starting March 1, 2011.

Finally, to the extent plaintiff alleges a broader cause of action that she was wrongfully terminated in violation of public policy for *merely asserting* potential or actual legal rights (*Tameny*, *supra*, 27 Cal.3d 167), or wrongfully terminated in retaliation for asserting such rights, that cause of action fails as well. That is because, in the summary judgment context, once an employee has established a prima facie case of wrongful termination or retaliation, an employer must offer a legitimate reason for an adverse employment action; if the employer does so, the burden shifts back to the employee to raise a genuine issue of material fact that the employer's reason is actually a pretext to mask an illegal action. (See *Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 67-69.)

The undisputed facts and plaintiff's deposition testimony summarized immediately above show that Sutter had a legitimate reason for terminating plaintiff on February 1, 2011; and plaintiff has not raised an issue of fact that this reason was pretextual. In attempting to raise an issue of pretext, plaintiff relies on (1) an e-mail from Sutter's third party disability administrator to Sutter's in-house disability coordinator speculating about whether plaintiff's condition could reasonably be investigated as fraudulent; (2) a statement from Sutter's disability coordinator to plaintiff that the coordinator too had

11

taken a stress-related leave of absence from work at Sutter and that plaintiff did not need to take more time off than had the coordinator; and (3) the temporal proximity between plaintiff's accommodation requests and her termination. Plaintiff's first two items are too speculative to raise a genuine issue of material fact as to pretext, in light of the undisputed facts and plaintiff's deposition testimony summarized immediately above. And the third item falters in raising an issue of pretext when viewed against the undisputed facts showing that Sutter, before terminating her, granted plaintiff nearly five additional months of leave (accommodation-based) after she had exhausted her CFRA/FMLA leave, and further asked plaintiff for information whether additional leave would effectuate her return as a clinical assistant—information plaintiff did not provide.

Having properly summarily adjudicated all of plaintiff's causes of action, the trial court properly granted summary judgment.

### IV. Remand Is Necessary Regarding the Trial Court's Cost Award

Just prior to oral argument, plaintiff alerted us to a recent decision from the California Supreme Court, *Williams v. Chino Valley Independent Fire Dist.* (2015) 61 Cal.4th 97, which may affect the trial court's cost award to Sutter. Disapproving prior decisions on the award of costs in a FEHA action, *Williams* concluded (1) that "section 12965, subdivision (b), governs cost awards in FEHA actions, allowing trial courts discretion in awards of both attorney fees *and costs* to prevailing FEHA parties"; and (2) "that in awarding attorney fees *and costs*, the trial court's discretion is bounded by the rule of *Christiansburg* [*Garment Co.*] *v. EEOC* (1978) 434 U.S. 412 [54 L.Ed.2d 648]; an unsuccessful FEHA plaintiff should not be ordered to pay the defendant's fees *or costs* unless the plaintiff brought or continued litigating the action without an objective basis for believing it had potential merit." (*Williams*, at pp. 99-100, italics added.)

12

We will remand this matter to the trial court for it to consider, in light of *Williams*, the award of costs to Sutter.

## DISPOSITION

The judgment is affirmed, except as to the award of costs to Sutter. As to that award, the matter is remanded to the trial court as specified in part IV. of the Discussion. Each party shall bear its own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (5).) (***CERTIFIED FOR PUBLICATION***)

                                                               BUTZ_____, J.

We concur:

_____BLEASE_____, Acting P. J.

_____NICHOLSON_____, J.

13