Filed 10/27/20  Do v. Raytheon Company CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
### SECOND APPELLATE DISTRICT
### DIVISION FOUR

| | |
|---|---|
| TRISTAN DO,<br><br>    Plaintiff, Respondent, and Cross-Appellant<br><br>    v.<br><br>RAYTHEON COMPANY,<br><br>    Defendant, Appellant, and Cross-Respondent. | B293950<br><br>(Los Angeles County Super. Ct. No. BC603539) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michelle Williams Court, Judge and Joanne B. O'Donnell, Judge. Affirmed.

Pine Tillett Pine, Norman Pine, Scott Tillett, and R. Chris Lim; Barrera and Associates, Patricio T.D. Barrera; Vida M. Holguin for Plaintiff, Respondent, and Cross-Appellant.

Gordon Rees Scully Mansukhani, Stephen E. Ronk, Christopher R. Wagner, and Erika L. Shao for Defendant, Appellant, and Cross-Respondent.

# INTRODUCTION

Tristan Do sued his employer, Raytheon Company, and his supervisor, Hector DeSimone, while on a stress-related medical leave of absence. Do alleged Raytheon and DeSimone discriminated against him based on his sexual orientation and subjected him to a hostile work environment. He also claimed Raytheon failed to accommodate him for disabling stress and PTSD caused by the discrimination and harassment he endured while working at the company.

The jury found in favor of Raytheon and DeSimone on Do's discrimination and harassment claims, but found Raytheon liable for failure to reasonably accommodate and failure to engage in the interactive process. It awarded Do compensatory damages totaling $1 million and $750,000 in punitive damages. The trial court later awarded attorneys' fees and costs to Do.

Raytheon appeals the judgment to the extent it held Raytheon liable for failure to reasonably accommodate and engage in the interactive process. Do cross-appeals, contending the trial court abused its discretion when determining the amount of attorneys' fees and costs awarded to him.

We affirm the judgment and the attorneys' fees and costs order.

# FACTUAL AND PROCEDURAL BACKGROUND

Do began working at Raytheon in 2004 as a mechanical engineer. Beginning in 2012, he reported directly to DeSimone. Just a few months into their working relationship, DeSimone started treating Do "differently," assigning Do a "heavier workload," treating Do "harsh[ly]," and yelling at him in meetings.

In 2013, Do suffered from Bell's Palsy, and took a six-week medical leave of absence. Do returned to work, but was "scared

that [his] Bell's Palsy would come back . . . ." In February 2015, as a result of DeSimone's continued alleged harassment, Do suffered from severe stress and took another medical leave of absence.

On December 8, 2015, while still on a stress-related medical leave of absence, Do filed a complaint against Raytheon and DeSimone alleging sexual orientation discrimination, constructive termination, assault and battery, harassment, retaliation, and failure to prevent discrimination and harassment. Do then filed a first amended complaint (FAC), adding two disability-related claims against Raytheon: (1) failure to reasonably accommodate; and (2) failure to engage in the interactive process. In the FAC, Do alleged that stress resulting from the continued harassment perpetrated by DeSimone caused him to take a stress-related medical leave of absence that continued up to the time he filed the FAC.

On February 17, 2017, while still on a leave of absence, Do sent an email to Raytheon stating, in part, that he would like to return to work and a "reasonable accommodation could include an attempt to return to work part-time to a Raytheon business located in LA County where [he] live[d], although [he] would consider Orange County" but he did "not believe that returning to work for the management who [he] believe[d] acted discriminatorily towards [him] and caused [his] physical and emotional injuries – including PTSD, [was] best for [his] recovery." Raytheon responded, stating it did not have "any open requisitions in Los Angeles [C]ounty" and "[t]he only position available [was] the position [he] held when [he] went out on a leave of absence, reporting to the same manager." The response omitted any reference to Orange County. Do did not return to work, and Raytheon terminated him on April 7, 2017.

Before trial, Raytheon filed a motion in limine to exclude evidence, argument, or testimony regarding Do's request for a new supervisor, asserting a request for a new supervisor as an

3

accommodation for a disability is per se unreasonable. The court denied the motion.

During trial,[1] Raytheon requested the trial court approve a special jury instruction based on a holding in *Higgins-Williams v. Sutter Medical Foundation* (2015) 237 Cal.App.4th 78, 84 (*Higgins-Williams*): "An employee's inability to work under a particular supervisor because of anxiety and stress related to the supervisor's standard oversight of the employee's job performance does not constitute a [mental] disability under FEHA. [Citation.]" Following argument, the court denied Raytheon's request, stating it would be "unduly confusing to the jury."

The jury found in favor of Raytheon on Do's claims for discrimination, retaliation, harassment, and failing to prevent discrimination or harassment. It found Raytheon liable, however, for failure to reasonably accommodate and failure to engage in the interactive process, and awarded Do compensatory damages totaling $1 million and $750,000 in punitive damages. It found in favor of DeSimone on all of Do's claims against him individually.

After the court entered judgment against Raytheon, the company moved for a new trial and filed a motion for judgment notwithstanding the verdict.[2] The court denied both motions.

Do filed a motion seeking to recover $1,996,766 in attorneys' fees, $55,322.29 in expert fees, and costs. Raytheon filed a motion to tax costs. The court awarded Do $695,090 in attorneys' fees. It explained the amount of fees sought "must be reduced to reflect issues relat[ing] solely to the discrimination, harassment and retaliation claims," on which Raytheon prevailed. The court denied Do's request for expert fees, and taxed Do's claimed costs by $5,273.65.

---

[1] Judge Michelle Williams Court presided over the trial and ruled on the motions in limine.

[2] The court entered a separate judgment in favor of DeSimone.

4

Raytheon appeals from the judgment and Do cross-appeals from the attorneys' fees and costs order.

## DISCUSSION

## I.   RAYTHEON'S APPEAL

### A.   Substantial Evidence Supported the Jury's Reasonable Accommodation Verdict

"Under [Government Code] section 12940,[3] it is an unlawful employment practice 'to fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee' unless the employer demonstrates doing so would impose an undue hardship. (§ 12940, subd. (m).) The essential elements of a failure to accommodate claim are: (1) the plaintiff has a disability covered by . . . FEHA; (2) the plaintiff is a qualified individual (i.e., he or she can perform the essential functions of the position [with accommodation]); and (3) the employer failed to reasonably accommodate the plaintiff's disability. [Citation.]" (*Wilson v. County of Orange* (2009) 169 Cal.App.4th 1185, 1192.)

Raytheon contends substantial evidence did not support the jury's reasonable accommodation verdict because: (1) Do did not suffer from a disability under FEHA; (2) Do's request to be transferred to a new supervisor was per se unreasonable; and (3) Do offered no evidence that an alternate position was available to him. We disagree for the reasons discussed below.

### 1.   Substantial Evidence of Do's Disability

A qualifying "'[m]ental disability'" under FEHA includes "any mental or psychological disorder . . . , such as . . . emotional or mental illness" that "limits a major life activity." (§ 12926,

---

[3]   All further undesignated statutory references are to the Government Code.

subd. (j)(1).) The term "major life activity" is broadly construed and includes "physical, mental and social activities, and working[ ]" (*id.*, subd. (j)(1)(C)); "limits" means the achievement of a major life activity is made difficult. (*id.*, subds. (j)(1)(A) & (B)). Further, under California law, "'working' is a major life activity," whether or not "the actual or perceived working limitation implicates a particular employment or a class or broad range of employments." (§ 12926.1, subd. (c).)

Here, Do was diagnosed with "post-traumatic stress disorder from hostile work environment" and "major depressive disorder recurrent episode severe." Do received ongoing treatment for his mental disabilities by two medical professionals, and was prescribed medication. Do's treating psychiatrist testified that, at the time of trial, he could return to work in a "non-hostile environment," but he was not able to return to work in 2015 or 2016.

Raytheon concedes PTSD and depression generally qualify as disabilities entitled to protection under FEHA. It argues, however, that based on *Higgins-Williams*, *supra*, 237 Cal.App.4th 78, Do's conditions are not disabilities under FEHA because he could perform his job as an engineer at Raytheon, just not under DeSimone's supervision. We are unpersuaded.

In *Higgins-Williams*, plaintiff's treating physician diagnosed her with "adjustment disorder with anxiety," and "reported plaintiff's disabling condition as '"stress[] when dealing with her Human Resources and her manager."'" (*Higgins-Williams, supra*, 237 Cal.App.4th at p. 81.) Based on the physician's diagnosis, the company granted plaintiff a stress-related leave of absence from work. (*Ibid*.) When plaintiff returned to work, her supervisor began singling her out for negative treatment, was curt and abrupt with her, and on one occasion "grabbed plaintiff's arm and yelled at her, after which plaintiff suffered a panic attack, left work, and never returned." (*Id*. at p. 82.) Plaintiff submitted a disability accommodation

6

request form, requesting a transfer to a different department under a different supervisor. (*Ibid*.) Thereafter, her treating physician recommended extending the leave two more months. When the company refused and plaintiff did not return to work, the company fired her. (*Id*. at pp. 82-83.) Plaintiff sued the company for disability discrimination, failing to engage in an interactive process, failing to make reasonable accommodations, retaliation, and wrongful termination. (*Id*. at p. 81.) The Third Appellate District affirmed the trial court's grant of summary judgment in favor of the company, holding "an employee's inability to work under a particular supervisor because of anxiety and stress related to the supervisor's standard oversight of the employee's job performance does not constitute a disability under FEHA. [Citations.]" (*Id*. at p. 84.)

Even assuming we agree with the holding in *Higgins-Williams*, an issue we will address below in section I.B, the record contains substantial evidence from which the jury could have concluded DeSimone's actions did not constitute "standard oversight." For example, Do testified DeSimone yelled at him in group meetings and treated him more "harshly" than other employees DeSimone supervised. One of Do's coworkers, Mr. Shakeridge, testified he observed DeSimone treating Do with "hostility" at status meetings and "everybody became uncomfortable" in the meetings. Another coworker, Ms. Munoz, testified she observed DeSimone treating Do "poorly" and DeSimone "picked on [Do]." She further testified she left a meeting once after observing DeSimone get "heated at [Do] probably about nothing" and it was "very uncomfortable to watch it."

That the jury concluded Do was not harassed or discriminated against based on his sexual orientation does not mean DeSimone acted appropriately and exercised "standard oversight." We therefore conclude substantial evidence supports

7

the jury's finding that Do suffered from a FEHA-protected disability, i.e., a disability that limited his ability to work.

## 2. Do's Transfer Request was Not Unreasonable as a Matter of Law

"'Reasonable accommodation' is defined in . . . FEHA and its implementing regulations only by way of example. [Citations.]" (*Nadaf-Rahrov v. Neiman Marcus Group, Inc.* (2008) 166 Cal.App.4th 952, 972, fn. omitted.) Reasonable accommodation may include "reassignment to a vacant position." (§ 12926, subd. (p)(2); Cal. Code Regs., tit. 2, § 11065, subd. (p)(2)(N); see also *id.*, § 11068, subd. (d)(1)(A) ["As a reasonable accommodation, an employer or other covered entity shall ascertain through the interactive process suitable alternate, vacant positions and offer an employee such positions, for which the employee is qualified, under the following circumstances: [¶] (A) if the employee can no longer perform the essential functions of his or her own position even with accommodation . . . ."].)

Ignoring the plain language of FEHA, Raytheon relies on an unpublished federal district court opinion (*Alsup v. U.S. Bancorp* (E.D. Cal., Jan. 15, 2015, No. 2:14-CV-01515-KJM-DAD) 2015 U.S. Dist. LEXIS 5100 (*Alsup*)) to argue Do's request for a transfer was unreasonable as a matter of law. While unpublished federal district court opinions are citable, they do not constitute binding authority. (*City of Hawthrone ex rel. Wohlner v. H&C Disposal Co.* (2003) 109 Cal.App.4th 1668, 1678, fn. 5.) We decline to follow *Alsup*.

There, plaintiff alleged she requested a transfer to a new department because she suffered from severe depression and acute anxiety stemming from her supervisor treating her "'in a negative and devaluing manner'" and making comments "'of an unwelcome sexual nature . . . .' [Citation.]" (*Alsup, supra*, 2015 U.S. Dist. LEXIS at p. 2.) The court held plaintiff failed to state a

8

claim for failure to accommodate because "the plaintiff's requested accommodation, transfer to a new position under a new supervisor, is unreasonable as a matter of law." (*Id*. at p. 19.) We find the court's reasoning in *Alsup* unpersuasive. After citing to out-of-state cases, the *Alsup* court stated that even without the benefit of those cases, plaintiff has not stated a claim because "[p]laintiff's work environment could not have been modified or adjusted in a manner that would have enabled the plaintiff to perform the functions of her job." (*Ibid*.)

*Alsup* predates the #MeToo movement and is out of step with current law. If the supervisor indeed made unwelcome sexual advances and was otherwise demeaning the employee, firing or disciplining the supervisor and/or placing the employee under a different supervisor would have been warranted and would be obvious, reasonable accommodations that would permit the employee to return to work. Similarly, Do's work environment could have been adjusted (e.g., by transferring Do to another supervisor or replacing DeSimone) so that Do could perform the essential functions of his job. We therefore decline to follow *Alsup* and conclude its purported per se rule — that transferring an employee to a vacant position under a new supervisor can never be a reasonable accommodation — is inconsistent with FEHA.

### 3. Substantial Evidence of an Alternative Position

Alternatively, Raytheon contends Do offered no evidence that another position was available to him.[4] "If the employee cannot be accommodated in his or her existing position and the

---

[4] Raytheon and Do disagree on who bears the burden of proof at trial to demonstrate a reasonable accommodation existed. Even assuming Do had the burden of proving a vacant position existed, substantial evidence supports the reasonable accommodation verdict.

requested accommodation is reassignment, an employer must make affirmative efforts to determine whether a position is available. [Citation.]" (*Raine v. City of Burbank* (2006) 135 Cal.App.4th 1215, 1223.) Raytheon argues when Do "finally asked HR about other positions, Raytheon investigated and found no vacant position available, other than the position he held when he went out on disability." Substantial evidence, however, supports a contrary conclusion.

First, in response to Do's request to transfer to another position in Los Angeles or Orange County, Raytheon responded it did not have "any open requisitions in Los Angeles [C]ounty." It did not advise Do whether vacant positions existed in Orange County, however. Second, Do testified he sought an open position as a project manager. Do testified he was qualified for the position and that one person applied after he did, and nevertheless received an interview. Although FEHA does not require an employer to promote a disabled employee as an accommodation, this was not the reason Raytheon provided for declining to consider Do for the vacant project manager position. Instead, Raytheon claimed Do waited too long and the position had been filled. "We do not reweigh evidence or assess the credibility of witnesses on review for substantial evidence. [Citation.]" (*San Diego Gas & Electric Co. v. Schmidt* (2014) 228 Cal.App.4th 1280, 1292.) We therefore conclude there is substantial evidence in the record from which a jury could conclude a vacant position was available, and the reason Raytheon gave for not considering Do for the project manager position was pretextual.

### B. The Trial Court Did Not Abuse its Discretion by Declining to Give the *Higgins-Williams* Jury Instruction

Raytheon contends the trial court abused its discretion by refusing to give a special jury instruction based on the holding in

10

*Higgins-Williams*: "An employee's inability to work under a particular supervisor because of anxiety and stress related to the supervisor's standard oversight of the employee's job performance does not constitute a [mental] disability under FEHA." We agree with the trial court's conclusion that the proposed instruction would be "unduly confusing to the jury."

"A party is entitled upon request to correct, nonargumentative instructions on every theory of the case advanced by him which is supported by substantial evidence." (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 572.) A party is not entitled, however to instructions that incorrectly state the applicable law (see, e.g., *Hyatt v. Sierra Boat Co.* (1978) 79 Cal.App.3d 325, 333-335), or instructions that are confusing or misleading. (*Harris v. Oaks Shopping Center* (1999) 70 Cal.App.4th 206, 209-210.) When a proposed instruction is erroneous, misleading, or incomplete, the trial court may properly reject the instruction and is not required to modify or correct it. (*Boeken v. Philip Morris, Inc.* (2005) 127 Cal.App.4th 1640, 1673.)

As discussed above, a qualifying mental disability under FEHA includes any mental illness that limits the person's ability to work. (§ 12926, subd. (j)(1)(C).) In concluding that a mental disability "related to the supervisor's standard oversight" does not constitute a disability under FEHA, the *Higgins-Williams* court relied on *Hobson v. Raychem Corp.* (1999) 73 Cal.App.4th 614, 618 (*Hobson*). (*Higgins-Williams*, *supra*, 237 Cal.App.4th at p. 84.) In *Hobson*, the court held "the inability to perform one particular job, or to work under a particular supervisor, does not constitute a qualified disability" under FEHA. (*Hobson, supra*, 73 Cal.App.4th at p. 628.) But as noted by the *Higgins-Williams* court, *Hobson* applied "the narrower federal test of disability of '*substantially* limits' a major life activity, rather than the broader California test of simply 'limits,'" and *Hobson* was disapproved on that point by our Supreme Court in *Colmenares v. Braemar*

*Country Club, Inc.* (2003) 29 Cal.4th 1019, 1031, fn. 6. (*Higgins-Williams, supra*, 237 Cal.App.4th at p. 84.) The court in *Higgins-Williams* concluded, however, the holding it relied on in *Hobson* (i.e., the inability to perform one particular job, or to work under a particular supervisor, does not constitute a qualified disability) remains good law. (*Id.* at pp. 85-86.) Even assuming we agree, it is not at all clear that the holding the *Higgins-Williams* court extracts from *Hobson* is a correct statement of law, i.e., that whether an employee suffers from a FEHA-protected disability is dependent on whether the supervisor practiced "standard oversight."

In any event, the phrase "standard oversight" is ambiguous. This point is underscored by the facts in *Higgins-Williams*. There, the court held the supervisor's actions constituted standard oversight: "As for the alleged nonstandard supervisorial oversight, all plaintiff can muster is that [the supervisor] began singling plaintiff out for negative treatment on September 8, 2010, and that on the very next day, [the supervisor] grabbed plaintiff's arm and yelled at her, after which plaintiff suffered a panic attack, left work, and never returned." (*Higgins-Williams, supra*, 237 Cal.App.4th at p. 86, fn. 2.) If it was ever standard workplace conduct for a supervisor to grab and yell at an employee, that time has long passed. We therefore conclude the proposed jury instruction had the potential of confusing and misleading the jury because it did not define "standard oversight." And, Raytheon could have, but did not, request a revised instruction. It is not the trial court's duty to modify the proposed instruction. (*Boeken v. Philip Morris, Inc.*, *supra,* 127 Cal.App.4th at p. 1674.) Moreover, even if we were persuaded the court erred in declining to give the proposed instruction, Raytheon failed to demonstrate prejudice. The record on appeal does not include a complete set of jury instructions from which we could determine whether it is reasonably probable a different result would have been reached if the refused

12

instruction had been given. (See *Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 580-581 ["when deciding whether an error of instructional omission was prejudicial, the court must [] evaluate (1) the state of the evidence, (2) the effect of other instructions, (3) the effect of counsel's arguments, and (4) any indications by the jury itself that it was misled."].)

### C. Substantial Evidence Supported the Jury's Interactive Process Verdict

"Under FEHA, an employer must engage in a good faith interactive process with the disabled employee to explore the alternatives to accommodate the disability. [Citation.]" (*Wysinger v. Auto. Club of Southern California* (2007) 157 Cal.App.4th 413, 424, citing § 12940, subd. (n).) Raytheon contends substantial evidence did not support the jury's interactive process verdict for the same reasons it contends substantial evidence did not support the reasonable accommodation verdict: Do failed to identify a reasonable accommodation; Do's request to be transferred to a new supervisor was unreasonable as a matter of law; and Do did not suffer from a recognized disability under FEHA. We reject these contentions for the reasons discussed above.

## II. DO'S CROSS-APPEAL

After trial, Do moved for an award of attorneys' fees of $1,996,766 ($998,383 with a multiplier of 2.0) and expert fees of $55,322.29. The judge[5] awarded attorneys' fees in the amount of $695,090, but denied the request for expert witness fees. She also taxed Do's claimed costs by $5,273.65. Do contends the court abused its discretion when determining the attorneys' fees and costs award by (1) refusing to award a multiplier; (2) decreasing

---

[5] Judge Joanne B. O'Donnell heard the attorneys' fee motion.

the lodestar to account for limited success; (3) denying expert witness fees; and (4) taxing costs. We disagree.

### A. Governing Legal Principles and Standard of Review

Under FEHA, the court, in its discretion, may award reasonable attorneys' fees and costs to the prevailing party. (§ 12965, subd. (b).) "[I]n exercising its discretion, a trial court should ordinarily award attorney[s'] fees to a prevailing plaintiff, unless special circumstances would render an award of fees unjust." (*Young v. Exxon Mobil Corp*. (2008) 168 Cal.App.4th 1467, 1474.) To calculate the fee award, the trial court first determines the lodestar, i.e., the number of hours worked multiplied by a reasonable hourly fee. (*Taylor v. Nabors Drilling USA, LP* (2014) 222 Cal.App.4th 1228, 1249.) The trial court may increase the lodestar by applying a multiplier or enhancement if it finds other factors weigh in favor of a higher fee. (*Weeks v. Baker & McKenzie* (1998) 63 Cal.App.4th 1128, 1171.)

We review a trial court's attorneys' fees award for abuse of discretion, and we presume the trial court considered all appropriate factors in selecting the lodestar and applying a multiplier. (*Taylor v. Nabors Drilling USA, LP*, *supra*, 222 Cal.App.4th at pp. 1249-1250.) The judge is in the best position to determine the value of professional services rendered in his or her court. (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095 (*PLCM Group*).) The award will not be disturbed unless we are convinced that it is clearly wrong. (*Ibid*.)

### B. Rejection of 2.0 Multiplier

A court has the discretion to apply a multiplier or fee enhancement to the lodestar figure to take into account a variety of factors, including "(1) the novelty and difficulty of the

14

questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, [and] (4) the contingent nature of the fee award." (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132 (*Ketchum*).)

Here, the experienced judge assessed the *Ketchum* factors and declined to award a multiplier: "This was a lengthy employment case based on FEHA. It was fact-intensive, but so are all such cases. It took approximately three years to get to trial, and there was considerable litigation since judgment. But the case was not so consuming that it would reasonably preclude any other employment. There were times when the litigation was intensive, but other times when it was not. It was a contingent fee case, but so are virtually all employment cases. The hourly rates awarded are on the high side of reasonable, based on the skill of plaintiff's attorneys. Plaintiff did not prevail on a significant number of his claims."

Do contends that absent a multiplier, "contingency attorneys cannot be fairly compensated compared to lawyers paid an hourly-fee." But our Supreme Court made clear "the trial court is not required to include a fee enhancement to the basic lodestar figure for contingent risk . . . ." (*Ketchum, supra*, 24 Cal.4th at p. 1138; see also *Green v. Dillingham Constr. N.A.* (2002) 101 Cal.App.4th 418, 428-249 (*Green*) [remanding to the trial court to "exercise its discretion on whether a fee enhancement is merited" for "contingent risk" because the trial court incorrectly determined it was not permitted to enhance the fee award based on contingent risk].) Here, unlike in *Green*, the judge recognized the contingent risk was *a* factor it could rely on in adjusting the lodestar figure, but properly exercised its discretion in declining

15

to apply a multiplier after applying *all* the *Ketchum* factors to the facts of this case.[6]

## C.    Decrease in Lodestar

"[A] prevailing party generally may not recover for work on causes of action on which the party was unsuccessful. [Citation.]" (*Mann v. Quality Old Time Service, Inc.* (2006) 139 Cal.App.4th 328, 342.) In evaluating the impact "limited success" has on an award of attorneys' fees, California applies the two-step test outlined in *Hensley v. Eckerhart* (1983) 461 U.S. 424 [103 S.Ct. 1933; 76 L.Ed.2d 40] (*Hensley*). First, the trial court must evaluate "whether 'the plaintiff fail[ed] to prevail on claims that were unrelated to the claims on which he succeeded[.]'" (*Environmental Protection Information Center. v. Department of Forestry & Fire Protecti*on (2010) 190 Cal.App.4th 217, 239 (*Environmental*), quoting *Hensley, supra*, 461 U.S. at p. 434.) Second, if the court finds that successful and unsuccessful claims are related, "the court proceeds to the second step of [the] *Hensley* inquiry, which asks whether 'the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award.'" (*Environmental, supra,* 190 Cal.App.4th 217, 239, quoting *Hensley, supra*, 461 U.S. at p. 434.) "Full compensation may be appropriate where the plaintiff has obtained 'excellent results,' but may be excessive if 'a plaintiff has achieved only partial or limited success.'" ( *Environmental, supra,* 190 Cal.App.4th 217, 239, quoting *Hensley*, *supra*, 461 U.S. at pp. 435, 436.)

---

[6]     Do repeatedly refers to this case as a "public interest case" to justify a multiplier, but he does not claim that his success on his two disability FEHA claims "had any broad public impact or resulted in significant benefit to anyone other than himself." (*Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970, 990.)

The trial court acknowledged "[t]here were a large number of facts, the significance of which had to be considered in the totality of the circumstances, which formed a common core of facts in all of the causes of action." It further observed "not all facts were intertwined," however: "There were distinctive facts in the disability claims, on which Plaintiff prevailed, and the claims based on discrimination, harassment, and retaliation on which Plaintiff did not prevail." The court therefore held "[t]he claimed amount must be reduced to reflect the issues related solely to the discrimination, harassment and retaliation claims."

Do argues the trial court abused its discretion because it "was operating under the mistaken belief that" it was *required* to reduce fees to account for distinctive facts related to the claims on which Do did not prevail. We disagree. The trial court's statement that fees "must be reduced to reflect the issues related solely" to claims on which Do was unsuccessful is a correct application of the law. (See *Chavez v. City of Los Angeles*, *supra,* 47 Cal.4th at p. 989 ["If a plaintiff has prevailed on some claims but not others, fees are not awarded for time spent litigating claims unrelated to the successful claims, and the trial court 'should award only that amount of fees that is reasonable in relation to the results obtained.' [Citation.]"].)

Do's alternative argument that this was not a limited success case because "the special verdict form was undifferentiated, entitling [Do] to the entire jury award whether he prevailed on some or all of his claims" also has no merit. The special jury form indicates Do prevailed on two of his eight claims. That the jury form awards a lump sum (as opposed to a separate damages award for each of the disability claims) does not mean Do "enjoyed complete" success. It is unreasonable to infer, as Do urges us to do, that even if Do prevailed on all his disability claims, the jury may not have awarded him any additional damages.

17

Finally, Do claims the court erred in not identifying the "distinctive facts" related solely to the unsuccessful claims. But it is not the court's duty to make specific factual findings explaining its calculation of the fee award. (*Taylor v. Nabors Drilling USA, LP* (2014) 222 Cal.App.4th 1228, 1250-1251 (*Taylor*), quoting *California Common Cause v. Duffy* (1987) 200 Cal.App.3d 730, 754-755 ["'In California, the trial court has no sua sponte duty to make specific factual findings explaining its calculation of the fee award and the appellate courts will infer all findings exist to support the trial court's determination. [Citations.] . . . . [I]t is incumbent on the party who is dissatisfied with the court's calculation of the number of allowable hours to request specific findings.' [Citation.] Appellant 'did not request specific findings and therefore may not now complain on appeal that [it does] not know which particular hours the court eliminated.' [Citation."].) Like the appellant in *Taylor*, Do failed to request additional specific findings from the trial court; therefore, he is precluded from doing so on appeal.[7] We conclude the trial court did not abuse its discretion by reducing the lodestar by 20% to account for Do's lack of success on a majority of his claims.

Do also challenges the trial court's reduction of the hourly fees of three of the seven timekeepers included in his motion for attorneys' fees. The trial court reduced Mr. Barrera's hourly rate from $800 to $750, Mr. Holguin's hourly rate from $800 to $700, and Ms. Lauzon's rate from $600 to $550. "The value of legal

---

[7] For the same reason, we reject Do's contention that the trial court erred in reducing the lodestar for unspecified duplicate billing and billing for clerical/secretarial duties. It is not the trial court's duty to identify specific hours it eliminated when calculating the attorneys' fee award. (*Taylor, supra,* 222 Cal.App.4th at pp. 1250-1251.) As Do's counsel acknowledged at the hearing on the attorneys' fee motion, reviewing attorneys' fee requests at the conclusion of trial takes an immense amount of time: "It looks like a lot of time went into this. It looks like the papers were read and reconsidered, and we appreciate that."

services performed in a case is a matter in which the trial court has its own expertise. [Citation.]" (*PLCM Group, supra*, 22 Cal.4th at p. 1096.) On appeal, we will not disturb the trial court's modest reduction in hourly rates where, in the court's judgment, "[s]ome of the requested hourly rates [were] unreasonably high[.]"

### D. Expert Witness Fees

Under Code of Civil Procedure section 998, subdivision (d), the trial court has discretion to award expert witness fees to a plaintiff if plaintiff's settlement offer was rejected and he later obtains a more favorable judgment. The trial court declined to award expert fees because Do "failed to sufficiently support his request for expert witness fees." The trial court's conclusion is supported by the record.

Do requested $55,322.29 in expert fees. The majority of the expert fees requested related to fees incurred by experts who did not testify at trial. Although a trial court may award fees spent on experts who did not actually testify (see *Santantonio v. Westinghouse Broadcasting Co.* (1994) 25 Cal.App.4th 102, 124), plaintiff must demonstrate the fees were "reasonably necessary . . . [in the] preparation for trial . . . ." (Code Civ. Proc., § 998, subd. (d).)

Here, Do's counsel stated he "was required to engage expert witnesses," but failed to offer any explanation regarding why the expert fees were "reasonably necessary."[8] The supporting documentation also lacked specificity. For example, in support of expert fees incurred by Mr. Robbins, Do attached a "Balance Due" statement showing $40,899.68 in fees and $322.61 in interest, but

---

[8]     Do's counsel's description of Mr. Robbins' services, for which Do sought $52,458, was limited to: "review of four Raytheon investigations, relevant deposition transcripts, preparation."

providing no detail regarding the work performed. On this record, it was well within the trial court's discretion to deny Do's request for expert fees.

### E. Costs

"Generally, the prevailing party in 'any action or proceeding' is entitled to costs as a matter of right." (*Huerta v. Kava Holdings, Inc.* (2018) 29 Cal.App.5th 74, 79 (*Huerta*), quoting Code Civ. Proc., § 1032, subd. (b).) An award of costs to the prevailing party in a FEHA action, however, "is never a matter of right, but is always within a trial court's discretion." (*Huerta, supra*, 29 Cal.App.5th at p. 80, citing § 12965, subd. (b); see also *Williams v. Chino Valley Independent Fire Dist*. (2015) 61 Cal.4th 97, 108 (*Williams*) [holding "section 12965, subdivision (b) [is] an exception to Code of Civil Procedure section 1032, subdivision (b), mak[ing] an award of ordinary costs to a prevailing FEHA party discretionary rather than mandatory . . . ."].)

Here, the court granted Raytheon's motion to tax costs for the following: (1) travel expenses totaling $471.50; (2) attorney service and messenger costs totaling $415; and (3) mock trial and jury consultants totaling $4,487.15.

Do challenges the court's ruling on travel expenses because the trial court, he contends, improperly relied on Code of Civil Procedure section 1033.5, subdivision (a)(3).[9] As stated above, section 12965, subdivision (b) governs the award of costs in FEHA cases. Our Supreme Court held, however, "the definition of allowable costs in Code of Civil Procedure section 1033.5 governs the *type* of costs that may be awarded under Government Code section 12965, subdivision (b)[.]" (*Williams, supra,* 61 Cal.4th at

---

[9] The only travel expenses authorized by Code of Civil Procedure section 1033.5 are those to attend depositions. (Code Civ. Proc., § 1033.5, subd. (a)(3).)

p. 106 [Emphasis in original].) Thus, the trial court correctly relied on Code of Civil Procedure section 1033.5.

Do also contends the messenger fees, mock trial expenses, and jury consultant expenses were reasonably necessary costs, and therefore should not have been taxed. The trial court found Do "failed to meet his burden of supporting the necessity of messenger fees." This finding is consistent with Code of Civil Procedure section 1033.5, subdivision (a)(14), which states fees "for the electronic filing or service of documents" are recoverable costs, but does not include messenger fees. (See *Nelson v. Anderson* (1999) 72 Cal.App.4th 111, 132 ["Messenger fees are not expressly authorized by statute, but may be allowed in the discretion of the court. [Citations.]"].) Regarding mock trial expenses, the trial court explained: "Although plaintiff states the mock trial was helpful in determining trial strategy and shortened the trial, no specifics of how this occurred were provided and the Court cannot find that it was reasonably necessary." Similarly, regarding jury consultant expenses, the trial court found Do "failed to meet its burden of establishing that this was a reasonably necessary expense." We find no abuse of discretion.

21

## DISPOSITION

The judgment and attorneys' fees and costs order are affirmed. The parties are to bear their own costs on appeal.


CURREY, J.


We concur:


MANELLA, P.J.


WILLHITE, J.