Filed 8/25/23 Guatemala v. Regus Management Group CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| VIVIRIANA GUATEMALA,<br><br>　　　Plaintiff and Appellant,<br><br>　　　v.<br><br>REGUS MANAGEMENT GROUP, LLC, et al.,<br><br>　　　Defendants and Respondents. | B316724<br><br><br>(Los Angeles County Super. Ct. No. 19STCV07112) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Dennis J. Landin, Judge. Affirmed.

Gusdorff Law, Janet Gusdorff; Reisner & King, Adam Reisner, Tessa King and Greg Taylor for Plaintiff and Appellant.

Shankman Leone, Kendra D. Presswood; Quarles & Brady, E. Joseph Connaughton and Ashley D. Kearney for Defendants and Respondents.

———————————————————

Viviriana Guatemala appeals the judgment in her employment suit in favor of respondents Regus Management Group, LLC (Regus) and Erika Deras. On de novo review, we uphold the order sustaining demurrers without leave to amend because appellant's Fair Employment and Housing Act (FEHA) claims are untimely. We also conclude that summary judgment was properly granted on appellant's whistleblower and wrongful termination claims. She did not report illegal activity, did not show a disability affecting a major life activity, and did not notify Regus of a disability or request an accommodation. At most, the evidence shows appellant was terminated because she was constantly late for work. We affirm the judgment.

## FACTS AND PROCEDURAL HISTORY

### *Appellant's Complaint*

On February 28, 2019, appellant filed a lawsuit alleging FEHA violations and other claims arising from the termination of her employment at Regus on March 9, 2017. She applied for and received a right-to-sue letter in February 2019. Respondents told appellant that her statutory causes of action are time-barred and offered to waive costs as to those claims if she dismissed them voluntarily. Appellant refused to dismiss the claims.

Appellant's third amended complaint (TAC) is the operative pleading.[1] She alleges that in 2016, she informed her supervisor, Deras, that she has panic attacks and anxiety. In 2017, when appellant told Deras that she was post-operatively restricted to lifting items under five pounds, Deras replied, "Fine, I'll do it myself." Over a two-week period, Deras would "leer" and "yell and scream" at appellant because of her disability. Appellant claims Deras used appellant's company credit card to "embezzle" company funds by purchasing lunch and personal items.

---

[1] The TAC contains five FEHA claims (harassment, discrimination and retaliation based on a disability, failure to accommodate or engage in the interactive process); a family rights act claim; a whistleblower claim; and claims of emotional distress and wrongful termination in violation of public policy.

On March 9, 2017, Regus terminated appellant's employment. When appellant protested, Human Resources (HR) asked her to provide proof that medical leave affected the decision to terminate. Though she complained to several managers, Regus did not make a good faith effort to determine if her absences were protected.

In February 2019, counsel demanded that Regus reinstate appellant's employment. Regus did not take corrective measures or reinstate appellant. She asserts that respondents were motivated by her actual or perceived disabilities and need for accommodations and medical leave.

### *Respondents' Demurrers*

Respondents demurred to the TAC. They argued that appellant's FEHA claims are barred by a one-year limitation period; other claims— for emotional distress, harassment, whistleblowing, and retaliation— fail as a matter of law. Respondents asked the court to sustain demurrers without leave to amend and award sanctions.

In opposition, appellant asserted that her FEHA causes of action are preserved by the "continuing violations doctrine." She believed she sufficiently pleaded outrageous conduct; severe and pervasive harassment; retaliation; and a whistleblower violation.

The court sustained demurrers to appellant's FEHA claims without leave to amend, finding that she did not make a timely administrative claim or show continuing violations to toll the limitations period. The court sustained demurrers to appellant's intentional infliction of emotional distress claim because she did not allege outrageous conduct.[2] It overruled demurrers to her whistleblower claim.

### *Motion For Summary Judgment*

Respondents asked the court to summarily adjudicate appellant's remaining claims of a whistleblower violation and wrongful termination in violation of public policy. Appellant countered with her

---

[2] Appellant's brief does not discuss the ruling sustaining demurrers to her emotional distress claim.

3

own motion for summary adjudication of her wrongful termination claim.

The record shows that appellant began working for Regus in 2015 as a community service representative. After being promoted to manager in July 2016, she was responsible for running the day-to-day operations of a business center, greeting customers, managing complaints, reviewing accounts, ensuring proper billing, and overseeing employees. She reported to Deras.

Soon after her promotion, appellant was repeatedly late to work. Deras moved appellant's start time from 8:30 to 9:00 a.m., after appellant said it was hard to wake up because she stays up late at night, but appellant continued to arrive late. On July 18, 2016, Deras reminded appellant to be on time; appellant wrote, "I understand and accept any consequences that may follow due to tardiness, which may include a write up. I take full responsibility." Appellant did not cite a medical reason for her tardiness or claim a disability.

On August 11, 2016, appellant wrote to Deras that anxiety caused her "to pull over to the side for a few minutes." Appellant acknowledged being warned about tardiness, and "understand[s] and accept[s] responsibility for disciplinary action." Deras did not perceive appellant's email as a claim of medical disability or request for an accommodation. Appellant did not tell Deras she had a disability.

Appellant was placed on a performance improvement plan (PIP) in August 2016, owing to excessive absenteeism, tardiness, and subpar performance, despite being coached on punctuality and attendance. She persistently arrived late in September and October 2016, but noted that Deras told her to come in late on two days. Deras emailed appellant at the end of September, asking, "Is there an issue on why you're not able to come in on time?" Appellant did not respond or claim a medical disability.

Appellant was placed on a second PIP in October 2016, for tardiness and unauthorized overtime, and warned that further disciplinary action could lead to termination. She asserts that she did not receive the second PIP and Deras forged her signature on it. She

4

continued to be tardy from October 2016 into January 2017. Her panic attacks increased to sometimes three or four times per week. The record does not show that she told anyone at Regus that she panicked frequently or that it caused her tardiness or affected her ability to work.

Appellant texted Deras on January 5, 2017, to say she had anxiety that was "a little worse lately" but did not say she was unable to work. On January 19 to 20, 2017, Deras told appellant to "go home" after appellant texted that she felt "like crap." Appellant did not specify why she felt ill, but the exchange suggests a communicable illness—not anxiety—because Deras clarified that "I don't want to get sick and I know that [a coworker] doesn't want to get sick."

Appellant testified that she felt "anxious and depressed" and "wanted to take a few days off." She agrees that she was repeatedly reprimanded for tardiness and needed to be on time. Her tardy arrivals "could have been [because] I was having a panic attack, and I pulled over to the side until I could calm down." She did not seek psychological counseling.

Appellant was placed on a third PIP for excessive tardiness on January 11, 2017, and warned that she could be terminated. She asserts that she did not receive the third PIP and someone forged her signature on it. On January 25, 2017, appellant was counseled in person. Later that day, she texted Deras asking if she could work fewer hours without losing her benefits "because insurance is so important for me with all my medical things going on." Deras replied that appellant could work as an associate but appellant was not interested. Appellant wrote that the employee handbook indicated that she could have a reduced schedule, keep her same pay rate and retain benefits under the Family Medical Leave Act (FMLA) for a "serious health condition." Deras did not respond to appellant's text, forward it to HR, or help her apply for an accommodation. Deras testified that appellant had to take the matter up with HR.

5

Appellant admittedly did not contact HR to request medical leave for anxiety.[3]  However, two days later, on January 27, 2017, she asked Regus's benefits coordinator about taking medical leave for cosmetic enhancement surgery.  The coordinator provided a FMLA flyer and told her to contact Regus's medical leave administrator.  Although appellant did not follow proper procedures, she received 13 days off for the surgery.  A doctor authorized her return to work on February 22; she was restricted to lifting less than five pounds.

After returning, appellant continued to be tardy to work and claim unauthorized overtime.  She was counseled in February and March 2017.  She points to a text message on February 3, 2017, saying she had to pull over on the way to work due to a panic attack.

On March 8, 2017, appellant asked Deras not to use appellant's company credit card for food delivery, adding, "I do not want to get in trouble for something that is not covered."  Appellant did not accuse Deras of violating any law.[4]  Regus does not approve of personal use of its cards but it is not a problem if the charge is reimbursed.  In a declaration, appellant avers that she believed Deras was violating the law.  This belief was not communicated to respondents.

On March 9, 2017, HR manager Jennifer Baines informed appellant that her employment was terminated for violating Regus's

---

[3] At oral argument, appellant claimed that she did not report her anxiety to HR because Deras said "they would think that I wasn't deemed fit to be a manager."  The record is clear, however, that Deras did not view appellant's anxiety to be a disability and that it did not affect her ability to do her work.  Moreover, it appears that appellant did not follow Deras's claimed advice because she did contact HR to request leave for cosmetic surgery and had also communicated to HR by e-mail or text message that she had an anxiety attack on the way to work.

[4] Appellant cites page 1525 of the clerk's transcript to support her claim that she accused Deras of violating the law.  The citation shows exactly the opposite:  When asked at deposition "what did you say to [Deras] about violating the law," she answered, "Specifically as to the law, nothing."

attendance policy.  Her tardiness, not her performance at work, led to the termination. When appellant protested that she was allowed to arrive late and being retaliated against, Baines gave appellant one day to document her claims.  Appellant lacked access to her computer to obtain documents.

Time records show that appellant was late to work over 100 times in a one-year period.[5]  Company policy limits employees to three tardy arrivals in 30 days or nine tardy arrivals in a year.  Appellant listed instances in which she informed Deras that she was anxious while driving to work and had to pull over for several minutes, and days on which Deras allowed her to clock in late or asked her to do so.

Regus's HR did not receive a request for accommodation, though it knew of an isolated incident of anxiety.  HR does not investigate an employee who reports an incident of anxiety, unless there is a chronic, disabling health condition and request for accommodation.  On several occasions, appellant acknowledged her tardiness, took responsibility for it, and accepted discipline.  She was familiar with the process for seeking medical leave because she secured leave for cosmetic surgery.

In post-termination communications to Baines, appellant complained that Deras harassed and bullied her; she felt singled out for criticizing unethical business practices.  Appellant did not document these claims or provide details.  Regus did not change its decision to terminate appellant's employment.  On March 18, 2017, appellant told HR she was experiencing hardship due to her termination and would be unable to pay for doctors.

The trial court granted summary judgment for respondents.  It found no evidence to support appellant's claim that respondents retaliated because she made whistleblower or FEHA claims and no evidence of a violation of public policy.  The court entered judgment for respondents and awarded costs.

---

[5] HR sent appellant a list showing she clocked in late on 28 of 29 days in June to July 2016; on 30 of 37 days in July to September 2016; and on 70 days between September 2016 and March 2017.

## DISCUSSION

### 1. Ruling on Demurrer

An intermediate order sustaining a demurrer is reviewable on appeal from the final judgment. (*Jennings v. Marralle* (1994) 8 Cal.4th 121, 128.) A demurrer tests the sufficiency of the pleading as a matter of law. (*City of Chula Vista v. County of San Diego* (1994) 23 Cal.App.4th 1713, 1718.) Review is de novo, accepting the truth of material facts properly pleaded in the operative complaint, but not contentions, deductions, or conclusions of fact or law. (*Boshernitsan v. Bach* (2021) 61 Cal.App.5th 883, 889.)

Appellant asserts multiple causes of action under FEHA. FEHA requires that an employee " 'exhaust the administrative remedy provided by the statute by filing a complaint with the Department of Fair Employment and Housing (Department) and must obtain from the Department a notice of right to sue in order to be entitled to file a civil action in court based on violations of the FEHA.' " (*Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 63 (*Morgan*).)

When Regus terminated appellant in 2017, FEHA read, "No complaint may be filed [with the Department] after the expiration of one year from the date upon which the alleged unlawful practice or refusal to cooperate occurred." (Gov. Code, former § 12960, subd. (d).) The limitations period in wrongful termination cases—including FEHA claims—"begins to run on all the alleged causes of action on the date employment actually is terminated." (*Romano v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 483–484 (*Romano*).)

Demurrers are properly sustained if untimeliness plainly appears on the face of the complaint. (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42; *Doe v. Roman Catholic Archbishop of Los Angeles* (2016) 247 Cal.App.4th 953, 960.) Regus terminated appellant's employment in March 2017. Appellant concedes she "filed her FEHA complaint more than one year after she was terminated." On its face, the TAC shows she missed the statutory deadline.

8

To avoid the problem posed by filing her complaint a year late, appellant asserts the continuing violations doctrine. It provides that "an employer is liable for actions that take place outside the limitations period if these actions are sufficiently linked to unlawful conduct that occurred within the limitations period." (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1056; *Blue Fountain Pools & Spas Inc. v. Superior Court* (2020) 53 Cal.App.5th 239, 250.)

The doctrine applies when an employee is discriminated against over a long period. The misconduct must (1) be similar in kind, (2) have occurred with reasonable frequency, and (3) not have acquired a degree of permanence. (*Richards v. CH2M Hill, Inc.* (2001) 26 Cal.4th 798, 823.) "[A] ' "... '... systematic policy of discrimination is actionable even if some or all of the events evidencing its inception occurred prior to the limitations period.' " ' " (*Accardi v. Superior Court* (1993) 17 Cal.App.4th 341, 349.) A violation may continue until the employer "mak[es] clear to the employee in a definitive manner" that it will not accede to demands to cease its misconduct, "thereby commencing the running of the statute of limitations." (*Richards*, at pp. 823–824.)

In *Accardi* an employee alleged a hostile work environment from 1980 to 1989; additional workplace discrimination from 1989 to 1991 potentially brought the 1980 to 1989 acts within the limitations period. (*Accardi v. Superior Court, supra,* 17 Cal.App.4th at pp. 349–350 [plaintiff subjected to a decade-long campaign of abuse at a police department based on her gender].) The doctrine also applied to discrimination and harassment that occurred continuously from 2013 until the employee was terminated in 2018. (*Wallis v. Greyhound Lines, Inc.* (C.D. Cal. 2022) 2022 U.S. Dist. LEXIS 61059 *11.)

Cases applying the continuing violations doctrine allow *old* violations to be brought into play if misconduct continued throughout employment. During the period of continuing unlawful conduct, the employee's claim may not accrue " ' "until a reasonable person would be aware that his or her rights have been violated." ' " (*Morgan, supra,* 88 Cal.App.4th at p. 65.) However, " 'a continuing violation claim will

9

likely fail if the plaintiff knew, or through the exercise of reasonable diligence would have known, [he] was being discriminated against at the time the earlier events occurred.' " (*Ibid.*)

Here, appellant invokes the doctrine not to redress wrongs occurring in 2015, when she was hired, but to claim that Regus is somehow liable for events occurring *after* she left employment on March 9, 2017. When she complained to Regus's HR department, it wrote on March 28, 2017, "the decision to terminate your employment with Regus was based strictly on your continued violation of the tardiness policy" but HR would "continue to look into the allegations that you have made against your supervisor." This is Regus's last communication to appellant. The next event cited in the TAC is her 2019 demand to be reinstated.

The court instructed appellant to allege what actions, if any, she took to pursue her claims. She alleges that she complained about unlawful treatment to a manager and two supervisors. One said "he would speak with someone from the company." Another gave appellant "the impression that he understood she was targeted and wrongfully terminated and would help." From this, she "understood that these supervisors would take efforts to investigate her complaints and get her reinstated to her former position at Regus."

Because appellant cites no dates in her TAC, we cannot tell if her conversations with supervisors occurred one hour, one day, one week, one month or one year after she was fired. When, as here, untimeliness appears on the face of the complaint, the plaintiff must allege facts showing she has met the statute of limitations. (*County of Alameda v. Superior Court* (1987) 195 Cal.App.3d 1283, 1286–1287.) "Facts" include relevant dates. Her post-termination conversations with supervisors were friendly, not "similar in kind" to the abuse allegedly inflicted by Deras. (*Richards v. CH2M Hill, Inc., supra,* 26 Cal.4th at p. 823.)

Appellant did not meet her burden of alleging facts to meet the statute of limitations. The limitations period began on the date her employment ended. (*Romano, supra,* 14 Cal.4th at p. 484.) Regus's

10

failure to rehire her "does not demonstrate a continuing violation." (*Morgan, supra,* 88 Cal.App.4th at p. 65.)  Appellant does not allege that she applied for a job at Regus after her 2017 termination. Counsel's demand for her reinstatement in 2019 does not resuscitate claims that expired a year earlier.  Appellant's FEHA claims are barred as a matter of law.

## 2. Ruling on Summary Judgment

The summary judgment order is reviewable after entry of judgment.  (Code Civ. Proc., § 904.1, subd. (a)(1); *Bono v. Clark* (2002) 103 Cal.App.4th 1409, 1431.)  Review is de novo.  Summary judgment lies if "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  (Code Civ. Proc., § 437c, subd. (c); *Hartford Casualty Ins. Co. v. Swift Distribution, Inc.* 59 Cal. 4th 277, 286.)  We liberally construe evidence from the party opposing summary judgment and resolve doubts in that party's favor.  (*Hartford,* at p. 286.)  We determine "whether the court's ruling was correct, not its reasons or rationale."  (*Scheer v. Regents of University of California* (2022) 76 Cal.App.5th 904, 913 (*Scheer*).)

### a. Whistleblower Claim

Appellant alleged that Regus retaliated against her for complaining about disability harassment, discrimination, retaliation, and wage and hour violations.[6]  She was "terminated due to her disabilities and related complaints."

---

[6] "An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, . . . if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation." (Lab. Code, § 1102.5, subd. (b).)

11

Labor Code section 1102.5 "reflects the broad public policy interest in encouraging workplace whistle-blowers to report unlawful acts without fearing retaliation." (*Green v. Ralee Engineering Co.* (1998) 19 Cal.4th 66, 77; *Scheer, supra,* 76 Cal.App.5th at p. 913.) It "prohibits employers from retaliating against employees for 'disclosing information' concerning suspected violations of the law either internally or to government or law enforcement agencies." (*People ex rel. Garcia-Brower v. Kolla's, Inc.* (2023) 14 Cal.5th 719, 720–721 (*Kolla's*) [employee who complained to her employer about unpaid wages was promptly fired and threatened with deportation].)

The evidence shows that appellant did not report FEHA violations to Regus's HR department while employed. She claimed misconduct "[d]uring the termination conversation" on March 9, 2017. The trial court found it is "undisputed" that appellant did not complain until after termination. Regus could not "retaliate" for reported FEHA violations absent proof appellant made such reports.

Appellant claims she was terminated in retaliation for reporting that Deras used a company credit card for personal purchases. Appellant testified that while she was on medical leave, Deras used appellant's credit card. Appellant complained to Deras that she used the card "to buy lunch for yourself." This does not amount to an accusation of illegality. Appellant did not tell Regus that Deras "embezzled" funds or report a violation of state law; instead, she wrote that the transactions were not hers and asked that they be reallocated. The statute "excludes from whistleblower protection disclosures that involve only disagreements over discretionary decisions, policy choices, interpersonal dynamics, or other nonactionable issues." (*Kolla's, supra,* 14 Cal.5th at p. 734.)

The Labor Code first "places the burden on the plaintiff to establish, by a preponderance of the evidence, that retaliation for an employee's protected activities was a contributing factor in a contested employment action. . . . Once the plaintiff has made the required showing, the burden shifts to the employer to demonstrate, by clear and convincing evidence, that it would have taken the action in

12

question for legitimate, independent reasons even had the plaintiff not engaged in protected activity." (*Lawson v. PPG Architectural Finishes, Inc.* (2022) 12 Cal.5th 703, 717–718, citing Labor Code section 1102.6.) A contributing factor is " ' " 'any factor, which alone or in connection with other factors, tends to affect in any way the outcome of the decision.' " ' " (*Lawson,* at p. 714.)[7]

Appellant did not show that retaliation for protected activities was a contributing factor in her termination. She was repeatedly warned of her deficient attendance and never once claimed she was being punished for having a disability. She did not blow any whistles about FEHA violations or other violation of law. Because she was not a whistleblower, Regus could not "retaliate" for complaints she did not make.

Deras's belief that appellant might qualify for FMLA (if she applied for it) does not amount to a belief that appellant might disclose a violation of law. Appellant knew her rights because she cited the Regus employee handbook to Deras. Regus's benefits coordinator sent FMLA information to appellant, who promptly sought leave for cosmetic surgery, not for a disability. When appellant mentioned FMLA to Deras in a late-night missive, she did not cite anxiety (or any other illness) as a disabling health condition: She just wanted to work fewer hours for full pay, for unspecified reasons.

To qualify for leave, an employee must show a "serious health condition that makes [her] unable to perform the functions of [her] position" or a medical disability. (Gov. Code, § 12945.2, subd. (b)(5)(C).) No one denied appellant medical leave for a serious condition: She did not report one. Instead, she disclosed a few moments of anxiety over the course of a year. Being told to "stay home" on a day when she was feeling ill did not give Regus notice of a serious health condition. (*Gibbs v. American Airlines* (1999) 74 Cal.App.4th 1, 7 [employee's

---

[7] *Lawson* was decided after the judgment in this case. Though the parties and the court were not guided by *Lawson*, this does not mandate reversal because appellant offered no evidence of retaliation for whistleblowing.

report of cold or flu-like symptoms, or that she " 'wasn't feeling well' " did not give notice of a serious condition].)

"None of this would have alerted [the employer] to the fact that [the employee] was requesting leave to take care of a serious health condition that made [her] unable to perform [her] job functions." (*Choochagi v. Barracuda Networks, Inc.* (2020) 60 Cal.App.5th 444, 455 [employer not on notice when an employee told a supervisor about migraines].) Appellant did not show that a FMLA claim contributed to her termination. The record shows only she was terminated for constant, unexplained tardy arrivals at work. When appellant acknowledged her tardiness, in writing, she took responsibility and accepted discipline. Respondents had no reason to believe she had a serious health condition.

### b. *Wrongful Termination in Violation of Public Policy*

Appellant alleged that she was terminated in violation of public policy for her actual or perceived disability, and/or her legally protected activities of protesting harassment and discrimination, and whistleblowing. A claim for wrongful termination in violation of public policy must be tethered to constitutional or statutory provisions; inure to the benefit of the public not just the interests of the individual; be well established at the time of discharge; and be fundamental and substantial. (*Stevenson v. Superior Court* (1997) 16 Cal.4th 880, 889–890.) Appellant tethers her claim to FEHA.

On appeal, appellant focuses a claimed link between her tardiness and her disabilities. She claims that respondents waived any challenge to her status as "disabled" because they did not raise it as an affirmative defense. Proving a disability is part of a plaintiff's prima facie case under FEHA. (*Arteaga v. Brink's, Inc.* (2008) 163 Cal.App.4th 327, 344–345.) It is not an affirmative defense.

Appellant's cosmetic surgery is not a "physical disability" under FEHA. (Gov. Code, § 12926, subd. (m) [defining physical disability as a disease, disorder, condition, disfigurement or anatomical loss affecting a body system and limiting a major life activity]; 29 C.F.R. § 825.113(d)

14

[cosmetic treatment is not a serious health condition].) Her claim of being put-upon following cosmetic surgery is not viable.

A "mental disability" under FEHA includes a "mental or psychological disorder or condition limits a major life activity if it makes the achievement of the major life activity difficult." (Gov. Code, § 12926, subd. (j).) Anxiety is not a disability if it causes brief impairment and does not limit a major life activity. (*Muller v. Automobile Club of So. Cal.* (1998) 61 Cal.App.4th 431, 445–446, overruled on other grounds in *Colmenares v. Braemar Country Club, Inc.* (2003) 29 Cal.4th 1019, 1031, fn. 6.) Feeling stressed or anxious by oversight at work is not a disability. (*Higgins-Williams v. Sutter Medical Foundation* (2015) 237 Cal.App.4th 78, 84–86.)

Appellant did not show any impairment affecting a major life activity. She did not present expert testimony or medical records to support her claim of disability. She sent a few messages to Deras over the course of a year about anxiety. Deras explicitly asked appellant if there was an issue that prevented her from arriving on time, but appellant did not respond at all, let alone claim a disability. On appeal, she does not argue that her anxiety, depression, backache or reflux disorder limited a major life activity.

At most, appellant claimed that anxiety caused her to pause during her commute. It did not prevent her from leaving the house, meeting clients, or engaging in the regular activities of life. She chose not to avoid tardiness by leaving home 15 minutes early, in case of a possible panic attack while commuting.[8]

When Deras moved appellant's start time from 8:30 to 9:00, she was still late. Deras suggested part-time employment, but appellant wanted full pay and benefits for part time work. (*Criado v. IBM Corp.* (1st Cir. 1998) 145 F.3d 437, 444–445 [employer need not accommodate a disability that is "prolonged or perpetual"]; *Hanson v. Lucky Stores, Inc.* (1999) 74 Cal.App.4th 215, 226 ["finite leave" is reasonable if the employee can fully perform the job after the leave].)

---

[8] She testified that panic attacks lasted 10 to 15 minutes.

Appellant did not seek mental health counseling and presented no evidence that she can ever be on time.  An employer need not " 'wait indefinitely for an employee's medical condition to be corrected.' " (*Hanson v. Lucky Stores, Inc., supra,* 74 Cal.App.4th at pp. 226–227.) Because appellant's job required interacting with clients at a service center, she could not arrive whenever she felt like it.  (See *Samper v. Providence St. Vincent Med. Ctr.* (9th Cir. 2012) 675 F.3d 1233, 1237– 1238 [listing cases in which irregular attendance compromises job performance].)

Appellant's situation is not comparable to the one described in *Humphrey v. Memorial Hospitals Ass'n.* (9th Cir. 2001) 239 F.3d 1128 (*Humphrey*).)  In *Humphrey*, a medical transcriber was constantly late because she spent hours getting ready for work; she was diagnosed with obsessive compulsive disorder.  Her psychiatrist felt working at home would be an accommodation, and some people in the plaintiff's job did so.  Her request for this accommodation was summarily (and improperly) denied based on prior disciplinary warnings for tardiness *before* her OCD diagnosis.  Then she was fired.

Appellant does not have a diagnosed disability.  No psychiatrist informed her employer, before termination, of a disability that " 'is directly contributing to her problems with lateness' " but can be treated, though she could require medical leave " 'until we can get the symptoms better under control.' " (*Humphrey, supra,* 239 F.3d at pp. 1130–1131.)

Appellant failed to show a disability that prevented her from working, as a matter of law.  She did not even claim disability until after termination.  She lists nine days when Deras approved a late arrival; seven days when she mentioned a panic attack; and two days when Deras told her to come in late, from 2016 to 2017.[9]  Appellant's

---

[9] These are documented events, unlike the "over 50" undocumented instances that appellant claimed at deposition.  An employer need not speculate about an employee's mental health if no problem is disclosed.

messages about a panic attack did not state that they caused her to be late.

Even if the 18 documented instances are subtracted from the 100-plus late arrivals, it far exceeds the allowable nine tardy arrivals per year. Respondents could not intuit, from the handful of panic attacks she reported while commuting, that appellant had a disability that limited a major life activity, given that her ability to work, once she arrived, was unaffected.

### 3. Costs Award

Appellant contends that respondents are not entitled to costs, despite being the prevailing parties, because costs are not a matter of right in FEHA cases. Government Code section 12965 governs cost awards in FEHA actions. It requires the trial court to determine if an unsuccessful FEHA plaintiff "brought or continued litigating the action without an objective basis for believing it had potential merit." (*Williams v. Chino Valley Independent Fire Dist.* (2015) 61 Cal.4th 97, 100.) *Williams* does not apply here.

Costs were awarded after the court decided appellant's wrongful termination and whistleblower claims on summary judgment. Code of Civil Procedure section 1032 governs cost awards on non-FEHA claims litigated after the court sustained demurrers to the FEHA claims. (*Moreno v. Bassi* (2021) 65 Cal.App.5th 244, 261–262.) These costs were incurred regardless of the court's dismissal of appellant's untimely FEHA claims.

17

## DISPOSITION

The judgment is affirmed.  Respondents are entitled to recover their costs on appeal.

NOT TO BE PUBLISHED.


LUI, P. J.

We concur:


CHAVEZ, J.


HOFFSTADT, J.

18